IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM RAGEN, etc.,

        Plaintiff,      Case No. 3:08 CV 1022

 -vs-

                   MEMORANDUM OPINION

HANCOR, INC., et al.,

        Defendant.

KATZ, J.

This matter is before the Court on the motion (Doc. 55) of the Defendants to dismiss, in part, the First Amended Complaint ("the complaint") (Doc. 52) filed by the Plaintiff in this action, William Ragen. For the reasons stated below, the motion will be granted in part and denied in part.

**I. Background**

For the purposes of the present motion, the Court will accept the allegations contained in the complaint as true. Beginning in 1987, Defendant Hancor, Inc., a manufacturer of products used in the drainage and wastewater management industry, hired Plaintiff as a "Direct Sales Representative." The relationship between Hancor and Plaintiff was governed by a series of contracts, all essentially identical in their relevant terms. Under these contracts, Plaintiff was to "use best efforts to market, promote, and sell" Hancor products in an assigned geographic territory. In exchange, Plaintiff was to receive a commission "on the net sale amount collected." Pursuant to these contracts, over the ensuing 20 years Plaintiff solicited sales of Hancor products in the northeast region of the United States, including New York, New Jersey, and Connecticut.

On July 29, 2005, Hancor was acquired by Defendant Advanced Drainage Systems, Inc. (ADS), a competitor in the drainage and wastewater management business. As a result of the

acquisition, Hancor and ADS became "one company" with a single corporate mind. Plaintiff continued to serve as a sales representative for ADS/Hancor until he was terminated in late 2007. He now brings this suit, alleging, among other things, that the Defendants unilaterally reduced his territory, refused to pay him commissions, and otherwise interfered with his ability to solicit customers, in violation of his contract.

**II. Standard of Review**

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). "To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 127 S.Ct. at 1965 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As the Court explained in *Iqbal*, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But "[w]here a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

**III. Discussion**

*A. Plaintiff's General Entitlement to Commissions*

The Defendants' first argument is that Plaintiff is only entitled to commissions on sales in connection with which he performed services. But this interpretation is not supported by the plain language of the written contracts between the parties. The 2001 contract between Plaintiff and Hancor provides that: "Commission shall be paid by Manufacturer to Representative at the end of each month based upon the previous month's net sales amount collected after deducting discounts, allowances, taxes, rebates, and returns as described in the Commission Schedule." The Representative is obligated, in turn, to use its "best effort to market, promote, and sell Products in the Territory" and to "[m]aintain, at its own cost and expense, a sufficient number of qualified salespeople as mutually agreed by Manufacturer and Representative, who will actively solicit orders for the Product in the Territory." (Doc. 52, Exh. J).

Nothing in the contract expressly limited the Representative's commissions to sales he actually procured, and the Court declines to read such a term into the contract. The structure of the contract, which obligated the Representative to hire additional salespeople to sell Hancor products at his own expense within his territory, would make little sense if the Representative were only entitled to commissions on sales for which he personally "produce[d] a buyer or seller who is ready, willing and able to buy or sell on the principal's terms" or which "directly result[ed] from the broker's efforts, without a break in continuity." *Dubuc, Lucke & Co. v. DiFlora*, 1999 WL 606779 at *7 (Ohio App. 4 Dist. Aug. 4, 1999). Rather, the contract is most sensibly read in

3

accordance with the plain meaning of its terms: the Representative was to be paid on the basis of the net sales amount collected in his territory.

The present contract is readily distinguishable from the real estate brokerage contract at issue in *DiFlora*, a case relied upon by Defendants. In the case of the brokerage contract in *DiFlora*, the principal contracted with an individual agent "to pay compensation contingent upon the agent's success in accomplishing a definite result." *DiFlora*, 1999 WL 606779 at *7 (quoting Restatement (Second) of Agency, § 449). But in the instant case, the Representative was charged with obligations other than simply "accomplishing a definite result": he was to use his "best efforts" to obtain sales, and was additionally required to maintain a qualified sales force at his own expense. If the Representative were limited to receiving commissions on sales he actually procured, the Manufacturer would have had to assume the needless inconvenience of monitoring which of the "net sales" collected in a given territory were directly attributable to the Representative, and which were not, and the Plaintiff would have received no benefit in exchange for his promise to maintain a qualified sales force. The proposed analogy to a real estate brokerage contract thus does not hold, and the complaint may not be dismissed on this ground.

## B. "Exclusive Right to Sell"

Defendants also contend that the contract was not intended to confer on Plaintiff an "exclusive right to sell" within his territory. Whether or not a relationship is intended to be exclusive is dependent on the surrounding context. See Restatement (Second) of Agency § 449, comment b ("[T]he circumstances under which a traveling salesman, dependent for compensation upon his commissions, is employed, may indicate that he is to have exclusive selling rights, as where he is limited to a particular territory for his sales."). For example, a person appointed as

"the Ohio State football coach" would rightly be disappointed to learn that another man had been hired to the same position, even in the absence of contractual language explicitly stating that the position is an exclusive one.

In the present case, the contract specified that Plaintiff was "appointed as the Manufacturer's direct sales representative for all products manufactured by Manufacturer (the "Products") for the accounts described on the attached territory or account outline (the "Territory")." It would be premature for this Court to hold that this language was not intended to confer Plaintiff an exclusive right to sell within an assigned territory in the absence of further discovery on the matter. Accordingly, Defendants are not entitled to dismissal on this basis.

## *C. Reductions in Assigned Territory*

Next, the Defendants argue that portions of the complaint must be dismissed because any "unilateral" reduction of the Plaintiff's assigned territory by Hancor was actually an enforceable oral modification of the contract. The Defendants are correct that such a modification, if the parties agreed to it, would have been supported by valid consideration so long as Hancor chose not to terminate the contract. *Financial Dimensions, Inc. v. Zifer*, 1999 WL 1127292 at *4 (Ohio App. 1 Dist. Dec. 10 1999). But the contract also contained a provision stating that "[n]either this Agreement nor any term hereof may be amended, released, discharged, changed or modified in any manner except by an instrument in writing which refers to this Agreement and is executed by each of the parties hereto," and this Court cannot simply infer all of the elements of an enforceable oral contract to modify this provision when doing so would be inconsistent with the well-pled allegations in the complaint. Indeed, the complaint specifically states that Plaintiff never agreed

to the reductions in his territory. (Doc. 52 at ¶ 34). The complaint thus may not be dismissed on this ground either.

### *D. Defendants' Liability for "Business Decisions"*

The Defendants ask this Court to dismiss portions of the complaint that might be construed as challenging Hancor's "management decisions." The basis for this argument is the following clause of the contract: "Manufacturer shall . . . [p]roduce products of high quality at competitive prices, provided, however that all business decisions, including, without limitation, those related to the manufacture, pricing and marketing of Products shall be under the sole control of Manufacturer." In the absence of further discovery, however, it would be premature for this Court to declare any of the conduct that Plaintiff complains of to fall within the protection of this provision, for this term of the contract is ambiguous. See *Bahamas Agri. Indus. Ltd v. Riley Stoker Corp.*, 526 F.2d 1174, 1179 (6th Cir.1975) ("According to Ohio law it is within the province of the jury, and not for the court, to ascertain and determine the intent and meaning of the contracting parties in their use of uncertain and ambiguous language.") (citing *Amstutz, Adm'r v. Prudential Ins. Co.*, 136 Ohio St. 404, 408 (1940) ("While it is the function of a court to construe a contract, it is the province of the jury to ascertain and determine the intent and meaning of the contracting parties in the use of uncertain or ambiguous language.")).

### *E. Claims Against ADS*

The next series of issues raised by the Defendants relate to the nature of the relationship between Plaintiff and ADS. According to the complaint, Plaintiff was employed by ADS after that company acquired Hancor, until his termination. ADS told Plaintiff, after its acquisition of Hancor, that he was now working for ADS and would be permitted to sell both ADS and Hancor

6

brand products. The complaint includes several claims against ADS, including ones for breach of contract, estoppel, *quantum meruit*, and tortious interference. These claims are pled in the alternative, depending on whether this Court finds that ADS became a party to the 2001 agreement between Plaintiff and Hancor or otherwise assumed the obligations of that contract. It is unclear whether ADS actually assumed the 2001 contract, for Plaintiff alleges that "Defendants have refused to provide Ragen with discovery that would definitively answer this question." (Doc. 63 at 20 n. 23).

The Defendants urge dismissal of all claims against ADS, and all claims based on Hancor's alleged delegation of its contractual duties to ADS. It is true that some of these claims are premised on alternative theories of liability. For example, this Court could not accept Plaintiff's *quantum meruit* theory of liability against ADS if it also accepted Plaintiff's theory that his relationship with ADS was governed by the terms of his 2001 contract with Hancor. And acceptance of Plaintiff's tortious interference claims would likewise be impossible if ADS had a contract with Plaintiff. But under Federal Rule of Civil Procedure 8(d) "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Cf. *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004) ("[U]njust enrichment may be pled in the alternative when the existence of an express contract is in dispute"). In the absence of further discovery clarifying the nature of the relationship between Hancor and ADS, and ADS and Plaintiff, decision on these issues would be premature.

Careful review of the complaint reveals that Plaintiff has pled sufficient factual material to support his alternative breach of contract, estoppel, *quantum meruit*, and tortious interference theories against ADS, and these claims may thus not be dismissed at this stage of the proceedings.

7

Plaintiff has also pled sufficient factual material to support his claim that Hancor improperly delegated its contractual rights and duties to ADS.

## *F. Plaintiff's Reformation Claim*

Plaintiff's fifth claim for relief asks for "reformation" of the 2001 agreement. The basis for this claim is set forth in the complaint follows: "When the parties entered into the 2001 Agreement, the parties intended that Ragen would have a contractual relationship with all persons who were acting as the "Manufacturer" under the 2001 Agreement . . . ." This theory does not appear to make total sense: as Defendants point out, Plaintiff asks this Court to find a mistake in the 2001 agreement as to the "terms for Plaintiff's future representation of an unknown company that might one day acquire Hancor." (Doc. 55 at 21). But it not an implausible theory based on the entirety of the factual material contained in the complaint, and this Court declines to dismiss it prior to discovery.

## *G. Plaintiff's Entitlement to Post-termination Commissions*

The Plaintiff's third claim for relief is for "post termination" breach of contract. But it is Ohio law that "[a]bsent a contract for future commissions, an employee is not entitled to post-employment commissions on previously generated business," *International Total Services, Inc. v. Glubiak*, 1998 WL 57123 at *2 (Ohio App. 8 Dist. Feb. 12, 1998), and the Plaintiff has not pled the elements of a valid contract for post-termination commissions. The contract between the parties does not mention post-termination commissions, only providing for commissions while Plaintiff was "Representative," and itself provides for termination upon thirty days notice. There is no allegation of an independent oral contract for post-termination commissions, or that Defendants failed to comply with the notice provision. Under these circumstances, the fact that

the parties agreed to a commission schedule does not constitute, "as a matter of law, a promise to pay commissions in perpetuity." *Weiper v. W.A. Hill & Assoc.*, 104 Ohio App. 3d 250, 258 (Ohio App. 1 Dist. 1995).

### *H. "Implied Duty of Good Faith" Claims*

The Plaintiff's eighth and ninth claims for relief are for "Breach of Implied Covenant of Good Faith and Fair Dealing" and "Circumvented Commissions". These do not appear to be independent causes of action recognized under Ohio law as distinct from a breach of contract claim. "Parties to a contract are bound toward one another by standards of good faith and fair dealing. However, this does not stand for the proposition that breach of good faith exists as a separate claim. Instead, good faith is part of a contract claim and does not stand alone." *Pappas v. Ippolito*, 177 Ohio App.3d 625,642 (2008) (internal quotation marks and citation omitted). Thus, a duty of good faith is implied in the contract itself, but does not furnish the basis for additional claims. The Plaintiff's eighth and ninth claims for relief are therefore dismissed.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's third, eighth, and ninth claims for relief are dismissed. The remainder of the complaint is sustained, and Defendants' motion to dismiss (Doc. 55) is thus granted in part and denied in part. The Defendants' earlier motion for partial judgment on the pleadings (Doc. 47) is denied as moot.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE